May it please the court, Dan Kowalski for the petitioner, Dr. Tesfamichael. Thank you. To understand this case, we have to go back to 1939 and then spring forward to 1990. I'll explain why. In every asylum case, there are three distinct components with three different standards of review. First, with respect to findings of fact, by statute 1252B4B as in the, what I call the compulsion doctrine or the reasonable adjudicator doctrine. This was codified in 1996 by IRIRA, but its origin springs from the 1992 case of Elias Zacharias. We've heard some questions about that. And it, in turn, grew from the 1939 case of Columbian enameling. The problem with that is that it only applies to findings of fact. But since 1992, since Elias Zacharias, the Department of Justice has tried to hypnotize all of us into believing that it covers everything. But it only covers findings of fact. The second component is conclusions of law. When an I.J. pulls the switch or doesn't pull the switch to label someone asylee or not asylee, refugee or not refugee, that's a binary decision. It's offer on. That is the conclusion of law that the I.J. draws from his findings of facts. That conclusion of law is reviewed by this Court de novo. All circuits agree on that. Third, if the judge says, I'm pulling the switch, you are eligible for a grant of asylum, then there's the discretionary decision to grant or not grant asylum. And that is governed by statute, the review of that decision, 1252b4d, as in David. So we have the three components, three different standards of review, two are statutory, one is common law. The first one, if the I.J. says you're eligible for asylum, and then there's a discretionary decision, that would never come to us. It might. There are rare cases. I haven't seen any that I can recall. But anyway, that's not in front of us today. I don't know if this is where you're heading, but it is. And we had a case about this the other day, and this seems to me to be a case that does present it. There is a confusion, perhaps, in our case law about how that turn-on-and-off works, it seems to me. And here, the regulations that are being relied on with regard to his ability to move elsewhere are discretionary regulations. Is that where you're going? No, Your Honor. That's the second part of my case. I'll deal with that in a minute. But that's an excellent point. All right. Well, go ahead. Thank you. I'll get to that very, very quickly. My point is that, with respect to the standard of review, I believe that our task here today is to focus on the second component. I agree with the factual record. There's nothing I can say about the facts. They are what they are. But with respect to the I.J.'s decision to pull the switch to grant asylum or not, that is review de novo. Second, with respect to internal relocation. But here, is there – does the I.J. find that he – that there was past persecution? He did not. The judge did not pull the switch of asylum. The judge said, but on these facts, I do not find that what happened to you was labeled persecution, and therefore I'm not going to draw the legal conclusion and apply the label asylee to you. I think that what happened to you, Dr. Tesfamichael, was legitimate investigation, but I don't – I'm not going to call it persecution. So when the judge made that labeling, not persecution, not asylee, he was drawing legal conclusions that this court may review de novo. And that's what we're here about, with respect to that part of the asylum claim. The second part of it is the internal relocation issue, whether the judge was right or wrong in saying you have to – Let me make sure, just on a question of sort of regulations of law. Yes. If there is a finding of past persecution, or if we hold that there should have been a finding of past persecution, who has the burden of proof to show ability or inability to relocate within the country? Is it the government's burden of proof at that point? If the regulation, ACFR 208.13b32, says that if the persecution was at the hands of government or government agents, the asylee need not relocate. But this was my earlier point. As I read that regulation and as I read that statute, that only comes in as a discretionary referral or denial stage. The regulation says that. That's correct. That's correct. The interesting thing is It's not an eligibility issue. Because past persecution under the statute is itself an eligibility. That's correct. That's correct. And the interesting thing is that that regulation is very recent and the statute itself on that issue is silent and has not changed ever. And this is why I mentioned the date 1990. What I'm wondering is if we thought there was past persecution, why would we get it all into the question of his – You're right. It wouldn't come up. It wouldn't come up. It simply wouldn't come up. It might come up if we sent it back because then the asylum officer or the IJ could say – could make a finding on that issue and deny discretionarily. That's true. But it wouldn't come up here? That's true. See, this is not the way we've treated it. I don't think it is. You're right. And this is why I mentioned the date 1990. Because if we look at the BIA's own case law, Matter of Vialta, from 1990-20, INN Decision 142, in that case the BIA granted asylum to a man from El Salvador who was afraid of paramilitary death squads. Nowhere in that case did the BIA say, well, you should have tried to hide out in some distant corner of El Salvador to escape these death squads. It simply wasn't an issue. And the reason is, I believe, that at that time in 1990 this regulation didn't exist. Nothing in the statute talked about internal relocation. And as I mentioned in the briefs, there is no statutory constitutional or international law requirement talking about internal safe haven, internal relocation. It's purely a creation of this regulation and the development of case law, in my opinion, in an effort to narrow the scope of who may be granted asylum. The government is looking for ways to reduce the number of asylees. I'll reserve the rest of my time. Thank you. Good morning. May it please the Court. Joshua Bronstein again for the United States Attorney General. As a preliminary matter, I want to make clear the two issues that are before the Court. Counsel talked about standard of review as if it were a primary issue. The Petitioner's brief to this Court, the opening brief, dealt with two issues, the issue of internal relocation and the issue of whether the Board properly reviewed his CAT claim. The question of what the standard of review is for the factual determinations of whether an applicant is eligible for asylum is not an issue that the Petitioner raised in the first instance. Did the IJA make a finding on past persecution? No, Your Honor, he did not. What he said was, what he said was, I don't – I mean, this Court's jurisprudence says that unless the IJA makes a specific adverse credibility finding, then you have to assume that what he says is true. And so the IJA, it's clear from the record, did not believe this Petitioner. He did not make a specific adverse credibility finding such that we could come in and argue that that had been made. However, it is clear from the record the immigration judge didn't believe the Petitioner. But in the absence of an adverse credibility finding, we have to take the testimony as true? That's right, Your Honor. And the immigration judge said – and the immigration judge said – So if we took it as true, why wouldn't there be past persecution? Leaving aside the relocation question for now. Well, in the first – responding to your question is, first of all, that wasn't raised by the Petitioner. And so I would submit that that issue is – Is that? What do you mean? What was not raised? The question of whether he established past persecution. The Petitioner's brief, as I read it, presents two very discrete issues. And so – and they – and he is very clear as to what they are. And the argument on them is from page 6 to page 9. The first one is whether the immigration judge made an error of law in finding internal relocation was appropriate. Well, but then he says, In doing so, the IJ flatly ignored HCFR in cases in which the persecutor is the government or the applicant has established persecution in the past. So how do we know he isn't claiming the second? Well, how do we know he is, Your Honor? Because then he says, In this case, it's beyond dispute that military people were the ones who jailed and tortured him. He's just assuming all the beating and torturing and essentially assuming the past persecution and just dealing with the question of relocation as a reason for not returning him. That's right, Your Honor. He's assuming past persecution rather than actually saying that it wasn't past persecution. There are a couple of problems with that statement. The first is that it is in dispute that military people were the ones who jailed and beat the Petitioner. I understand your argument. Are you arguing waiver because not mentioned in the brief? I am in the first instance because it was never presented before. So, yes, I am. Never presented before? Never presented before? The question of the issue of whether he established past persecution. The IJ assumed for purposes of argument. In other words, we have a case. The IJ assumed for purposes of argument past persecution and there was no reason for him to argue about it. Well, no, Your Honor. The problem with that is, I think, that – well, I'll argue in a moment. Everybody on the same page here, the page being maybe a wrong page for the reasons I stated before, but the page was that there was past persecution, but that the issue was whether he had a well-founded fear of future persecution because there's a dispute over whether he could have relocated. Is that not the issue that everybody seemed to think was the issue, which assumed the past persecution? That is the issue at which – that is the point at which the Petitioner's brief begins argument, yes. But I would note that in the IJ's decision, and, you know, and this bumps up against this Court's precedence with respect to adverse credibility determinants, but the court – the IJ said very clearly that he did not believe Petitioner that this happened. He says – Where is he saying that? Page 73 of the record, Your Honor. The Court finds the Respondent's credibility, and I'm quoting, The Court finds Respondent's credibility questionable. The Court finds it incredible that the government of Ethiopia would send a Respondent to the United States for an AIDS conference if he was being persecuted by that government in Ethiopia for political reasons, as he claims. And then the judge says perhaps it's because, as he says, which is a major component of our argument, that the Petitioner himself said that any harm that he had occur to him, while unfortunate, was limited by its – by his expressed testimony to one town of Asosa, Ethiopia. And now – All right. So ultimately, your position is that he did make a finding of past persecution – of non-credibility with respect to past persecution, and that it wasn't contested by the Petitioner. I'm – well, Your Honor, we did not brief it as such. However, I think it's abundantly clear there that he says he didn't say – Wait a minute. I don't think you argued that this was previously – I don't think you previously argued that this is an adverse credibility. I'm not arguing it now, Your Honor. I'm arguing that the – let me explain. I'm arguing that the immigration judge here – it's clear he didn't believe the Petitioner that these things happened. However, he jumped across the question of whether he established past persecution and said – and then he says on page – Do you have to remand to make – to get a finding as to whether he established past persecution? No, Your Honor. And that's – and that's the other – the other component of my argument is no, because in this case, because any persecution – the judge says even if the court were to find the Respondent's been persecuted by the local authorities for political reasons, it's strictly local by the Respondent's own mouth. And so – All right. But then we come across this problem that I was talking about before, which is that the statute says that it has to be either persecution or past – or a well-founded affair of future persecution, one or the other. So if he's established persecution, he's established eligibility. And the regs say the same thing, because the regs in 208.13, when they talk about discretionary referral or denial is when they talk about the relocation. They don't talk about it with respect to past persecution, because it doesn't apply to past persecution, does it? Well, I would – I would – And that's to eligibility with regard to past persecution. In other words, as I read these regs, what they're saying is if you have past persecution, you're in the door, but – but we can discretionarily deny it on the ground that you could have relocated elsewhere under some circumstances. Well, no. Actually, when you establish past persecution, the regulations give rise to a presumption that you have a well-founded fear. Overall, you must show that you have a well-founded fear. That is the question. Why? Where are you getting that from? Well, I don't have the regulations in front of me, Your Honor, but that's – that is – that is my reading. The statute says exactly the opposite, doesn't it? I don't believe so. The statute says persecution or a well-founded fear of persecution. Yes. But the regulations say that there – that he gets a presumption. I'm happy to – to brief that further for the Court. But that is – that is the way it works, that he will have a well-founded fear, a presumption of a well-founded fear, if he shows that he was persecuted in the past. And so in a case like this, where he's being removed to a country rather than a city where he had, if at all, he had problems. If you had the regulations in front of you, you would see that there's an I, a little I. It says, Discretionary referral or denial. Accept as provided, dot, dot, dot, colon, A. B, the applicant could have avoided future persecution by relocating to another part of the country. And that's under discretionary referral or denial. Right, Your Honor. That's where it appears in the regulations. Okay. And – and my position on that is, in this case, the immigration judge assumed for purposes of making this decision, because the immigration judge found discretionarily in that case that it was an easy – it was an easy answer. And that is, he cannot show that the harm – that he could have any trouble relocating in Ethiopia. And so the judge said, it doesn't – the judge is essentially saying, it doesn't matter if you were persecuted in the past. You can relocate. And this Court's precedents are not to the contrary. The Petitioner cites the Singh v. Mosharik case, and the Ilshar case is another case which is similar, a 1995 case. And as we note in our brief, all of those cases, and every one that I have read, deals with a situation where the national government has been the persecutor. This is the very clearest case that I think could exist, that this is not something that the national government was behind. This Petitioner, at Record 152 and 153, when explaining how he came, the judge was concerned that he came to the United States to participate in an AIDS conference selected by the national government, he says, quote, the organizations sent me here and had no idea that I had some problems. I had problems in a sosa with the local government, not with the national government. I don't believe they knew what was happening. This Petitioner, who claims to fear persecution upon his return to Ethiopia, has stated that he lived his entire life, testified that he lived his entire life in Addis Ababa, was secretly a member of this, the AAPO, which the State Department reports, I should note, have indicated that he could easily relocate even if he is a member of the AAPO, that the State Department reports at Record 202 indicate there is no violence towards members of the AAPO, as long as they renounce violence. And the Petitioner testified specifically that he was a nonviolent participant in that organization. So the ‑‑ I see my time is running up. If I could finish my thought. So this is a Petitioner who has never even mentioned to the government, the federal government, the national government, according to the evidence we have, that he has had a problem in this town of 8,000 people. He has not even chosen to live in that town. He was sent there by the National Health Ministry after he finished his residency in medical school. And he talked at length about how this town differed from the town he was actually from. And so this is a Petitioner who says, I've not even brought it to their attention. Now, he says he was detained. Does it matter at all? The record is fairly murky, as I recall, on whether he could have practiced medicine anywhere else. Does that matter? Am I right that it's murky in B, it doesn't matter? Assuming it's murky, no, it doesn't matter, Your Honor, because being able to ‑‑ not being able to work as a doctor, and again, it doesn't, it's not conclusive, but being able to work as a doctor or not is not determinative of whether he has a fear of harm in Ethiopia. I mean, the question I think might be different if he couldn't work at all. There was no way he could support himself at all where other people were able to do so. But I would note, if I could just have a couple more moments, that this Petitioner says he was detained for 21 days, and over a period of several years. He's never mentioned his detentions or beatings to the government, the health ministry that sent him to this town. And there's no evidence that he requested a transfer anywhere else. I would submit that this is the very kind of case that the State Department warned of, talks about in the profile for asylum claims with respect to Ethiopia, that this is a Petitioner who took advantage of an opportunity to come to the United States, who was selected by the government he claims would persecute him, and he attended a conference and then stayed, rather than returning to his  And I would say that this Petitioner, with the valuable medical information that he would have gleaned at this medical AIDS conference, and clearly when the average wage in Ethiopia is $121, it's not surprising. However, the evidence does not compel any conclusion that he would have any problem. It is quite a long way from compelling the conclusion that he would have a problem there. And so ---- Everything you say is so and makes some sense with regard to the local national distinction, except that the regulations don't seem to admit of it. Well, this Court ---- The regulation says in cases in which the applicant has not established past persecution, the applicant shall bear the burden of establishing that it would not be reasonable for him or her to relocate unless the persecution is by a government or his government sponsors. What you're saying is that even if the burden is on the government, you've proven it. Is that basically what you're saying? That's right, Your Honor. I think it's abundantly clear in the record. And there couldn't be a clearer expression. It's his own testimony. I only have problems in this small town that's about 300 miles away from the town I lived my whole life in. I would also, if I have just one more minute, note that this Petitioner claimed that his family was residing in Addis Ababa during the time of this hearing, which was in November of 1998. November of 1998 is significant because he later claims in his motion to the Board that he later claims that his mother was forcibly removed from Ethiopia to Eritrea. However, he claims that this happened at a date that predated, as we note in our brief, his testimony that the entire family was living. Sounds like we're back into adverse credibility. Well, Your Honor, again, I am not, and I want to make very clear that I am not arguing by implication. I am not trying to sideset this Court's presence. I think this is a case where that is problematic. It's clear. And I don't think the Court has to ignore that the I.J. found him, you know, less than credible. But the Court does have to credit him. I mean, I happen to think that there probably was an adverse credibility finding here. But the common ground on which this case is coming to us is that there wasn't one. And that's what we have to litigate now. I agree. If I had briefed the case, I would have definitely, I believe there is an adverse credibility finding. But I can't argue that now. But it's clear to me and it's clear on the record that the I.J. didn't believe him. And I think with very good reason. Thank you. Thank you very much. You've got some time left and the government ran over, so let's hear what you have to say. Thank you, Your Honor. Two points. A few of us are over 50 and can remember when it was common for totalitarian governments to get rid of their troublemakers and dissidents by exiling them, maybe on the pretext of. In brief, what's wrong with the government's argument that assuming that the burden is on them with regard to the relocation issue, that they've met it because your client himself said that his problem was in one little small town? Matter of Vialta. That's the crux of my answer. Matter of Vialta has not been modified or overruled by the Board or any court. I need help. I don't know that case. In Matter of Vialta, 1990, BIA decision 20, INN decision 142, the Board granted asylum to a man from El Salvador who was afraid of paramilitary death squads. Not the military, not the government. Paramilitary death squads might or might not have had some linkage to the government.  It wasn't the military. And it wasn't in any particular town or part of El Salvador. I'm not sure whether this was Judge Berzon's question, but it's mine. It's certainly related to Judge Berzon's question. Mine is just a straightforward factual question on this record. Assuming that we have a case in which past persecution has been made out, it then becomes the government's burden to show that he cannot relocate. Now, burden here is not, I think, burden of going forward. It's rather burden of proof. And the government can sustain its burden by whatever the evidence is in the record, including evidence that comes out of his own testimony. Why has the government not satisfied that burden of proof? Maybe I'm misunderstanding the regulation, but as I read the regulation, if the persecution is at the hands of the government or a government agent, the applicant need not relocate. Period? That the burden shifts. Then I stand corrected. And it might be difficult for this petitioner to meet that standard. But I think he might have to. So do you have an argument as to why he can satisfy it? I go back to Vialta and the fact that the whole concept of internal relocation is a regulatory imposition that does not flow from the statute and has not come from the BIA's own case law. Suppose we thought that there was this factual problem with that issue. The whole case has been determined on the hypothesis that there wasn't an adverse credibility finding. Do we then just take that hypothesis and or do we then, like I said, it doesn't matter. You lose anyway. Okay. All right. Thank you very much. Thank you very much. Thanks both sides for a useful argument. The case of Testamichael versus Ashcroft is now submitted. That's the last case in our argument calendar for the day and for the week. We now stand adjourned. All rise. This court for this session stands adjourned. Thank you. Thank you. Thank you.
judges: T.G. Nelson, W. Fletcher, Berzon